UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHNTE WARREN,

        Plaintiff,                    Case No. 2:10-cv-343

v.                                           HON. GORDON J. QUIST

CHIPPEWA CORRECTIONAL
FACILITY, et. al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On October 27, 2011 this Court ordered service of Plaintiff's complaint on Defendants Brian Peterson, Arthur Derry, Michael Conners, John McDonald, David Theut, and Gerald Covert. On January 18, 2012, and March 5, 2012, Defendants filed motions for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies, as well as on other grounds. Plaintiff has not filed a response. Upon review, I recommend that Defendants' motions for summary judgment be granted based on Plaintiff's failure to exhaust his available administrative remedies.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE,

2

ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at the Baraga Maximum Correctional Facility and complains of injuries sustained at the Chippewa Correctional Facility. In an opinion and order dated October 27, 2011, this Court dismissed some of Plaintiff's claims for failure to state a claim, including all claims against Defendants Chippewa Correctional Facility, Corrections Corporation of America, McQuiggin, and Brown (docket # 6, 7). In his *pro se* complaint, Plaintiff sued the following: Brian Peterson, Arthur Derry, Michael Conners, John McDonald, David Theut, and Gerald Covert. In an opinion dated October 27, 2011, this Court stated the facts of this case.

> In his complaint, Plaintiff alleges that on November 3, 2010, Defendant Peterson and other staff took a group of eight prisoners to the shower stalls. Plaintiff states that he was sitting on his bed waiting for the first group of inmates to finish showering when Defendant Peterson marked "refusal" on Plaintiff's special housing unit record. Another officer came around and took Plaintiff to the showers without realizing that Defendant Peterson had marked him down as refusing his shower. When Defendant Peterson discovered that Plaintiff had been allowed to shower, he was angry and marked Plaintiff down as refusing his shower on November 5, 2010. Plaintiff states that he requested a grievance form and that Defendant Peterson responded by stating that he and other staff would retaliate against Plaintiff if he filed a grievance by subjecting Plaintiff to false misconduct tickets and having him placed on food loaf. Defendant Peterson wrote a major misconduct ticket on Plaintiff for threatening behavior later that day. Plaintiff was found guilty of the misconduct on November 12, 2010.
>
> Plaintiff claims that Grievance Coordinator M. McLean received his grievance, but delayed filing it until after Defendant Peterson wrote the misconduct ticket, so that it would not look as if Defendant Peterson was retaliating against Plaintiff. Plaintiff contends that Defendant Peterson also promised to retaliate against another

3

prisoner, Martin Solomon #301631, by falsifying misconduct tickets. Plaintiff also asserts that he, prisoner Jones, and prisoner Solomon all received threatening behavior tickets after they filed grievances on Defendant Peterson. Plaintiff contends that prisoners Solomon and Jones were both witnesses on his behalf. Plaintiff states that he was "setup" by Defendant Peterson, who had a plastic spork, packs of salt and pepper, and a styrofoam cup planted in Plaintiff's cell. As a result, Plaintiff was placed on food loaf for failing to return his utensils. Plaintiff alleges that prisoner Solomon witnessed Defendant Conners plant the items in Plaintiff's cell while Plaintiff was in the shower. Plaintiff asserts that Defendant Peterson also had prisoner Jones placed on food loaf for filing grievances.

Plaintiff alleges that Defendant Peterson threatened to have Plaintiff's food trays poisoned. Plaintiff complained to Defendant Derry, who responded that he was fed up with Plaintiff and prisoner Solomon filing all "those goddamn grievances" and that sooner or later Plaintiff would get hungry enough to eat. When Plaintiff asked if Defendant Derry knew about the poison used in Plaintiff's food, he said "you know goddamn well I know about it." This comment was overheard by prisoner Solomon. When Plaintiff told Defendant Covert why he had not been eating, Defendant Covert laughed and said, "you lost weight and your blood pressure is low." Defendant Covert told Plaintiff to return to his unit.

On November 13, 2010, Defendant Peterson wrote a misconduct ticket on Plaintiff for "insolence," claiming that Plaintiff had refused to stop banging on his cell door and that he had called Defendant Peterson a "bitch" and told him to "get the fuck away" from the door. Defendant Theut failed to review Plaintiff's grievances against Defendant Peterson and ignored exculpatory witnesses / evidence in finding Plaintiff guilty of all of the misconduct tickets he received from Defendants. Defendant Theut told Plaintiff that he was friends with Defendant Peterson and that Plaintiff had been found guilty before the hearing even started. Defendant Theut advised Plaintiff to "think twice before" he filed another grievance on Defendant Peterson. Defendant McDonald subsequently wrote Plaintiff a misconduct for disobeying a direct order, telling Plaintiff that since he wanted to follow prisoner Solomon's behavior of writing grievances, he was getting the ticket. Plaintiff later told mental health staff about Defendants' conduct, and was advised to stop filing grievances.

>Plaintiff claims that Defendants conspired to violate his constitutional rights. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

(Opinion, docket #6).

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues

5

shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants note that Richard Russell, Manager of MDOC's Grievance Section, has indicated he searched the grievance database and that Plaintiff has not filed any Step III grievance appeals (docket # 10, *Exh*. C). Plaintiff has not properly exhausted as to any Defendant because he did not complete the grievance process. Therefore, Defendants are entitled to summary judgment on all of Plaintiff's claims for failure to exhaust administrative remedies.

In addition to Plaintiff's failure to properly exhaust, Defendant Covert contends that Plaintiff failed to make a clear showing that Defendant Covert was personally involved in the activity that forms the basis of the claim in accordance with 42 U.S.C. § 1983.

A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Plaintiff's claim fails to allege any personal involvement by Defendant Covert besides naming him in the complaint. Accordingly, the undersigned recommends that the Court dismiss Plaintiff's claim against Defendant Covert for lack of personal involvement. If Plaintiff's claim was properly exhausted as to Defendant Covert, the undersigned would recommend that Plaintiff's claims against Defendant Covert should be dismissed for lack of personal involvement. However, Plaintiff has failed to properly exhaust his administrative remedies as to Defendant Covert, so it is appropriate for the Court to grant Defendant Covert's motion for summary judgment on that basis.

Defendant Theut argues that he is entitled to absolute immunity because he is being sued for actions taken in the discharge of his duties. As previously noted, Plaintiff asserts that Defendant Theut, acting in his capacity as an Administrative Law Examiner, refuses to consider materials that Plaintiff believes were supportive of his not guilty plea. Plaintiff also alleges that Defendant Theut conspired with other defendants and violated his due process rights during the major misconduct hearing process.

The undersigned notes that Defendant Theut is entitled to absolute judicial immunity in relation to actions within his authority as an administrative law examiner. *Shelly v. Johnson,* 849 F.2d 228, 229 (6th Cir.1988). *See also Williams v. McGinnis,* Nos. 02–1336, 02–1837, 2003 WL 245352, at *2 (6th Cir. Jan.31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.,* No. 01–1943, 2002 WL 22011, at *1 (6th Cir. Jan.2, 2002) (same); *Gribble v. Bass,* No. 93–5413, 1993 WL 524022, at *2 (6th Cir. Dec.16, 1993) (same).

Therefore, if Plaintiff's claim was properly exhausted as to Defendant Theut, the undersigned would recommend that Plaintiff's claims against Defendant Theut should be dismissed as being barred by absolute judicial immunity. However, Plaintiff has failed to properly exhaust his administrative remedies, so it is appropriate for the Court to grant Defendant Theut's motion for summary judgment on that basis.

For the foregoing reasons, I recommend that Defendants' motions for summary judgment (docket #9 and #14) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 16, 2012